# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

RICHARD G. BURT,

        Plaintiff(s),

vs.

JACKIE CRAWFORD, CHARLES McBURNEY, DENNIS W. WALLACE, DWIGHT W. NEVEN, JEFFERY PAVAO, LIEUTENANT BACA, MARTHA SIMS, ROBERT MOORE, SERGEANT HUBBARD, and SERGEANT PROVONCAL,

        Defendant(s).

2:05-cv-1073-RLH-PAL

**O R D E R**

(Motion to Dismiss - #40)

Before the Court is Defendants' Motion to Dismiss (#40, filed May 5, 2006). Plaintiff filed a lengthy Response (#58), to which Defendants filed their Reply (#59).

The Motion seeks alternative grounds for resolution, asking that some portions of the Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) (for failure to state a claim), and that, as to other portions, they be granted summary judgment pursuant to Fed. R. Civ.P. 56. Rule 12(b) provides that, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."

1

Defendants clearly stated their intent to have the matter considered alternatively as a motion for summary judgment, and attached voluminous exhibits to their motion. Likewise, Plaintiff submitted voluminous exhibits with his opposition, and argues the existence of unresolved factual issues as a defense against the motion. Neither party has objected to the Court's consideration of the various evidentiary documents presented, and both have discussed the evidence at length.

Both parties have presented statements of uncontested, or contested, facts. While Plaintiff's often and primarily devolves into arguments, rather than statements of facts, under the circumstances the Court finds his statement of contested facts sufficiently acceptable for consideration of the motion.

## STANDARDS OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); s*ee also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); s*ee also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56©, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence that would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Likewise, "legal memoranda and oral argument are not evidence and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd.*, 585 F.2d at 952.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962). After drawing

1  inferences favorable to the respondent, summary judgment will be granted only if all
2  reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d
3  1297, 1298 (9th Cir. 1982).

4  <u>FACTUAL BACKGROUND</u>

5  The parties are sometimes opaque in their descriptions of the chronology of
6  this matter.  It is difficult to determine if that is the result of intentional vagueness or merely a
7  failure to realize the importance of chronology to the reader who has not lived the sequence
8  of events.

9  Another frustration is the use, by all parties, of alphabetic designations for
10  names and terms not readily apparent to the reader.  In fact, some of the documents are totally
11  meaningless in the context presented without explanation.[1]

12  Notwithstanding the foregoing, the Court will try to present a brief
13  chronological guide map.

14  On August 8, 2003, Plaintiff pled guilty to Voluntary Manslaughter with Use
15  of a Deadly Weapon, in the State Court, pursuant to a plea agreement in which Plaintiff
16  waived his "right to appeal the conviction . . . unless the appeal is based upon reasonable
17  constitutional jurisdictional or other grounds that challenge the legality of the proceedings. . .
18  ." Defendants' Motion, Exhibit A, page 4.  Judgement was entered on October 24, 2003.

19  He began his incarceration on November 3, 2003, at High Desert State Prison
20  (HDSP), located an Indian Springs, Nevada, under the authority of the Nevada Department of
21  Prisons (NDOC). He was sentenced to two sentences of 48-120 months, to run consecutively.

22  Upon his arrival, 11 law books, which he had in his possession, were retained
23  at the HDSP property room by Sergeant Katherine Hubbard because they had not been
24  previously authorized.  They were processed and returned to him December 4 or 5, 2003.

---

[1] An example is the document entitled LAW LIBRARY APPOINTMENTS submitted by both sides which has a row of columns headed by the following: MAM, TAM, WAM, RAM, FAM, MPM, TPM, WPM, RPM, and FPM, without any explanation of what the capitalized letters mean.  The document is useless to the Court without explanation.

However, he began filing grievances about the books within a few days. Upon is arrival, he was placed in a segregated intake unit, along with other new arrivals, which is a standard practice to provide time for the prison to evaluate the security level of each inmate and the appropriate unit in which to house the inmate.

During his stay in the segregated intake unit, which has the same accommodations as the general population, except that access to the library is accomplished by inmate "law clerks," Plaintiff claims that the law clerks demanded payment in the form of stamps, which is contrary to the prison's policies. He was moved from the intake unit to another unit on November 24, 2003, three weeks after he had arrived. It is during this stay in the segregated intake unit that Plaintiff claims he suffered actual damages because he was precluded from filing an appeal of his State Court conviction.

Another incident occurred in early or mid-January 2004, when a law book (perhaps printed from a computer) was sent to him by his father. Because he had not obtained prior approval for the book (or copy of a book), it was taken into custody like the others had been, until the proper approvals could be obtained. That process apparently took about a month also.

From March 16, 2004 to February 20, 2005 (and apparently continuing well beyond that date) Plaintiff complains that he was denied adequate access to the library, which he claims resulted in the denial of his petition for habeas corpus filed with this Court (before Judge Pro–2:04-cv-1384-PMP-PAL). That petition was dismissed on jurisdictional grounds because Plaintiff had failed to exhaust his state court claims prior to bringing his federal habeas claim.

Plaintiff's complaints, since he has been incarcerated, are that he is entitled to adequate access to the library in order to have adequate access to the courts; that he has not been given adequate time in the library (at one point he demanded access to the library five days a week, in the afternoon). He also claims that he was denied access to the library even when he had an appointment; that he was often denied access to books and documents he requested; that the person in charge of the library would delay the copying of cases or other

1    documents he requested; that he was harassed or ignored when he would make requests; and
2    that when he would file grievances, they often would be ignored, not acted upon, or
3    responded to with a self-serving comments.

4    He claims he was threatened with retaliation when he would demand his right
5    to access to the courts (actually to the law library) and that the threats chilled his First
6    Amendment rights.  However, it does not appear to have had much of a chilling effect.  In
7    2005 (there is some contradiction in the dates) he was charged with filing too many
8    grievances and filing facetious grievances, a hearing was conducted and he was placed in a
9    segregated unit as a result.  He filed 30 grievances either in three months or a year and three
10   months (again there is some contradiction in the dates represented).  Plaintiff's claims of
11   violation of due process and retaliation apparently stem from this and an earlier proceeding.
12   Many of his grievances are multiple pages long and read like briefs, with citations to cases
13   regarding prisoners' rights to access to law libraries.  In fact, at least two of his grievances are
14   13 pages long, one dated February 2, 2006, and the other February 8, 2006, and contain many
15   legal citations.  This is hardly evidence that his First Amendment rights have been chilled, or
16   that he has not had adequate access to the law library or legal materials.

17   Evidence that many of his grievances are frivolous and do not rise to the level
18   of constitutional violations is demonstrated by the following examples: in a grievance dated
19   September 20, 2005, he complains that, "C.O. Hendrix [a non-defendant] is harassing me on
20   a regular basis, e.g., during door call, he opens the door to let me in; I go in the room, and he
21   then closes the door behind me; all within a one minute time frame. . . .  This is unnecessary
22   and clearly harassing in nature. . . . [this] violates the United States Constitutional
23   Amendment Eight, i.e., to be free from cruel and unusual punishment. . . .  I want the
24   degrading and callous disregard for human life to stop. I am not a criminal. . . ."  Actually,
25   Plaintiff is, in fact, a criminal, and his conviction and incarceration places restrictions on him
26   that he appears to have difficulty accepting.

27   Notwithstanding the excessive grievances, Defendants accuse the Plaintiff of
28   failing to exhaust his administrative remedies.  It sounds as though at least the Defendants

6

were sufficiently exhausted by his grievances.  Perhaps Defendants' complaint is his failure to appeal the denial or rejection of his grievances.  However, there is a paucity of specific evidence of what should have been done, but was not, administratively.

In June 2003, before he was convicted of the crime for which he is serving his sentence, State Judge Michael Douglas issued an order, in connection with granting Plaintiff *in forma pauperis* status, that he should not be charged for making copies *in that case*.  Plaintiff complains that part of the denial of access to the courts is the prison's charging him for copies of cases, etc., in this case and his habeas case before Judge Pro.  Plaintiff claims such action constitutes contempt and is a constitutional violation.  This Court has no jurisdiction to address any contempt of a State Court Judge's order, and contempt of court has never risen to the level of a constitutional infraction.

It appears that shortly after the threat of sanctions[2] if he did not stop filing frivolous grievances, and the charges and hearing that followed, Plaintiff filed this lawsuit on August 25, 2005, although the Complaint was not officially filed until January 17, 2006.  There has been a flurry of motions by both sides, together with much discovery wrangling and other matters.  To date, 64 documents have been filed in this case.

## DISCUSSION

Certain aspects of Plaintiff's Complaint fail to state a claim upon which relief can be granted.

ELEVENTH AMENDMENT IMMUNITY

Plaintiff has sued all the named Defendants in their official and individual capacities.

In the absence of consent to suit, or a valid abrogation of immunity by Congress, a state is shielded from suit in federal court by virtue of the Eleventh Amendment. *See Oregon Short Line R. R. Co. v. Department of Revenue Or.*, 139 F.3d 1259, 1264 (9th Cir.

---

[2] Defendants deny he was threatened that there would be charges, only that there *could be* charges filed.  Whether it was a threat or warning is left to history.

1998); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996). The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.

U.S. Constitution, Amend. XI. The United States Supreme Court has clarified that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment*." Seminole Tribe of Florida v. Florida*, 517 U.S. at 58. Whether for monetary damages or for injunctive relief, any suit against a state in federal court is barred under the Eleventh Amendment. The State of Nevada has explicitly declined to waive its immunity from suit under the Eleventh Amendment. Nev. Rev. Stat. 41.031(3). Similarly, Congress has not abrogated immunity with respect to 42 U.S.C. §1983 cases or pendant state law claims. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984).

Furthermore, for the purposes of the Eleventh Amendment, a suit against an official, in his or her official capacity, is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Eaglesmith v. Ward* 73 F.3d 857, 860 (9th Cir. 1995). Accordingly, a plaintiff may not maintain a damages action under 42 U.S.C. §1983 against a state official in his or her official capacity. *Pennhurst*, 465 U.S. at 98-100. Neither the State of Nevada nor its official acting in his or her official capacity are "persons" under 42 U.S.C. §1983. *Will*, 491 U.S. at 71.

There is an exception to this rule of immunity as it applies to official capacity actions, against a state official, for injunctive relief, when challenging the constitutionality of a state official's action. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). This exception applies in situations where the injunction sought is to prevent a state official from enforcing an unconstitutional law or act. *Ex Parte Young*, 209 U.S. at 159. This refers to a legislative enactment. *Id.* In those cases a state official is stripped of his or her official character and is subjected to the consequences of his or her individual conduct. *Id*. at 159-60.

In this case, Plaintiff's Complaint has not sought injunctive relief. Furthermore, this Court has, in a prior Order denied Plaintiff's motion for injunctive relief, both because it was not pled in the Complaint and also on the merits. There is no basis for injunctive relief in the facts pled or argued by the Plaintiff.

Accordingly, the case must be dismissed against all the Defendants in their official capacities.

FAILURE TO STATE A CLAIM GENERALLY

Plaintiff names 10 Defendants and lists John Does 1-10. However, of the 10 named Defendants, five of them are only named as Defendants, but, other than identifying who they are and the position they hold, nowhere in the body of the Complaint are they discussed, nor are there any allegations or acts attributed to any of them. Accordingly, no claim has been made against them upon which any relief can be granted. Those named, but not accused, Defendants are Charles McBurney, Dennis W. Wallace, Dwight W. Neven, Jackie Crawford, and Martha Sims.

Furthermore, it appears that the only purpose of naming them is to identify them as various officials in the Nevada Department of Corrections, such as the Director, the warden, the assistant warden, etc. Perhaps Plaintiff's purpose was to attempt to place blame on the prison management officials because they are responsible for the actions of their subordinates or should be held accountable for failing to correct the correctional officers memorialized in Plaintiff's grievances.

It is well-settled law that a supervisor cannot be held liable under §1983 on the basis of *respondeat superior*. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 n. 58 (1978). The conduct alleged against the various Defendants, against whom Plaintiff does address allegations in the Complaint, fails to show that the Director, warden or assistant wardens had actual or constructive knowledge that any of their subordinates were causing constitutional injury to Plaintiff. There is no affirmative causal link between the supervisors' inaction and any particular constitutional injury allegedly suffered by the Plaintiff, to suggest a deliberate indifference to the violation of constitutional rights. *See Shaw v. Stroud*, 13 F.3d

1  791 (4th Cir. 1994).

2  While Plaintiff may have filed many grievances about his perceived
3  deprivation of law library privileges, the law is clear that it is not access to the library, but
4  access to the Courts that is protected by the Constitution.  The Court will discuss below why
5  the allegations in Plaintiff's grievances do not rise to the level of denial of access to the
6  Courts.  Suffice it to say here that there is no evidence, presented by Plaintiff, of deliberate
7  indifference to his constitutional rights, by those in supervisory capacities named in his
8  Complaint, but against whom there are no specific allegations or claims.

9  Accordingly, the Motion to Dismiss must be granted as to Charles McBurney,
10 Dennis W. Wallace, Dwight W. Neven, Jackie Crawford, and Martha Sims.

11 <u>COUNTS IV AND IX FAIL TO ALLEGE CLAIMS AGAINST ANY NAMED</u>
12 <u>DEFENDANT</u>

13 Counts IV and IX give a continuation of the narrative of events that Plaintiff
14 alleges took place.  However, Counts IV and IX do not make allegations against any of the
15 named Defendants.  Accordingly, they do not state a claim upon which any relief can be
16 granted against any named Defendant, and must be dismissed as separate counts or causes of
17 action.

18 In his arguments, although not in his Complaint, Plaintiff makes reference to
19 the disciplinary hearing or hearings in which he was disciplined.  It is difficult to determine
20 whether Plaintiff is complaining that because of this discipline he was placed in a segregated
21 unit for a period, during which he did not have direct access to the law library, or whether he
22 is contending that this is evidence of his denial of due process.  Although no Count addresses
23 "Due Process," the Court wishes to make clear that it finds no evidence to contradict
24 Defendants' evidence that Plaintiff was granted due process throughout each disciplinary
25 incident. (The issue of whether he was threatened or warned prior to one of the incidents,
26 that he was abusing the grievance process and was subject to discipline therefor, is a non-
27 issue.) In each case, in April 2005, and in the procedures which began in October 2005 and
28 culminated in January 2006, Plaintiff was accorded due notice of the charges, a preliminary

hearing was held where he pled not guilty, and a hearing was conducted. In the first instance he was found guilty of two of the charges and not guilty of two others. He was given 150 days disciplinary segregation, of which 120 days were suspended and he only spent 30 days in the segregated unit as a result. In the second, he was found guilty of abusing the grievance process and received 45 days in disciplinary segregation of which 30 were suspended and he only spent 15 days in the segregation unit. The conditions in the segregated unit substantially mirror those in administrative segregation, and he has only spend a total of 45 days in the disciplinary segregation, during which he has continued to file grievances and pursue this case. Thus, there is no evidence that he was not granted due process in every procedural step.

This Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conducted alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). The burden is on the Plaintiff to demonstrate "that there were no legitimate correctional purposes motiving the actions he complains of." *Pratt*, 65 F.3d at 808. Plaintiff Burt has failed to demonstrate that any of the disciplinary actions were not legitimate correctional actions.

COUNT VII FAILS FOR LACK OF JURISDICTION

Count VII alleges that Defendants ignored State Court Judge Michael Douglas's Order regarding *in forma pauperis* status in his criminal case and seeks damages for this contempt of court which he describes as the result of retaliation. First, this Court has no jurisdiction to enforce an order of a State Court Judge in another matter. Second, contempt of court does not rise to the level of a constitutional violation. Third, Judge Douglas's Order does not preclude the Defendants from requiring Plaintiff to pay for copies of law library documents he wishes copied in this case, or his habeas corpus petition.

Accordingly, Count VII will be dismissed as failing to state a claim upon which relief can be granted here.

REMAINING DEFENDANTS' INDIVIDUAL CAPACITY LIABILITY

The prior issues could be resolved using the standard for a motion to dismiss.

The liability of the remaining Defendants (Pavao, Baca, Moore, Hubbard, and Provoncal) must be determined using the standard for summary judgments.

Defendants present several bases for dismissing this action against the remaining Defendants in their individual capacities. They will be addressed seriatim.

Failure to Exhaust Administrative Remedies

Although this claim may be accurate, as noted above, the Court is not given sufficient understandable information to determine the validity of this argument. There is a plethora of grievances filed by Plaintiff which have been submitted by both sides in this dispute. If fact, many of them stated that they were made for the specific purpose of meeting the requirement of "exhausting administrative grievances/remedies." The grievances were sufficiently numerous that in the Defendants' view they become excessive, malicious, vexatious, and abusive. Furthermore, Robert Moore's Affidavit (Defendants' Exhibit M), paragraph 4, states that most of the grievances were administratively exhausted through Level Two of the grievance process.

Defendants argue that some of the claims Plaintiff now makes, were never the subject of a grievance, such as the claim that inmate law clerks were demanding payment in the form of stamps to provide information when Plaintiff was in a unit that required him to obtain library materials through inmate law clerks. While the Court was, indeed, unable to locate grievances made during the time Plaintiff was in that unit that alerted prison officials to this practice, there is insufficient information to determine whether Defendants are claiming that no grievances were exhausted, or that some were and some were not. If it is the latter, the Court cannot determine precisely which ones were or were not exhausted. Accordingly, the Court must decline to grant a dismissal or summary judgment on this basis.

Qualified Immunity

Briefly, this argument is that the actions of the prison officers did not violate any constitutional right of Plaintiff, and, if they did, the constitutional right was not clearly established at the time of the actions of the officers. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

1  The constitutional right which Plaintiff asserts is the right to reasonable access to the courts. That right was clearly established at the time of the incidents enumerated in the Complaint. The real issue is whether the actions of the remaining Defendants violated that right.

Plaintiff's real contention has to do with denial of access to the law library. His claim is that the denial of access to the law library caused him to be denied reasonable access to the court! Plaintiff's opposition to this motion argues that there are fact questions which remain which preclude summary judgment. He is correct that there are factual questions which remain about whether he was denied or otherwise thwarted in his access to the library. These factual questions are, in this Court's opinion, sufficient to preclude a determination of qualified immunity, but will not preclude the ultimate decision about summary judgment.

The allegations of Plaintiff go to whether the prison personnel ignored, or inadequately responded to, Plaintiff's request for library privileges. They go to factual questions about whether personnel retained his law books longer than was really necessary (even if not longer than permitted by the regulations); whether inordinate delays were implemented in responding to requests for books, cases, or the copying of the same; or whether the library was indiscriminately closed just to deny him access. The Court should note that there are other grievances which have been inserted in these claims which are (if they are true) nothing more than allegations suggesting that the prison personnel were being jerks. But being a jerk is not illegal, nor violative of constitutional rights. Perceived offenses during prisoner counts, or when called to meals, are irrelevant to the ultimate issue here of whether Plaintiff was denied access to the courts.

The issue is not whether the prison regulations were lawful. It is for prison administrators and not the courts to make the difficult judgments concerning institutional operations and administration. *Lewis v. Casey*, 518 U.S. 343, 361 (1996). The factual issues relate to whether the prison regulations were followed by prison personnel.

Plaintiff makes much of his fear of retaliation. One cannot recover from

another because of a fear they might retaliate. There must be actual retaliation, unless the fear caused Plaintiff not to exercise his rights. The only right he suggests was chilled by this fear (or threat) of retaliation is his First Amendment right of freedom of speech. It is clear from the plethora of grievances that any fear he had did not diminish or interfere with his desire to be heard. There is not even the suggestion that this fear of retaliation was instrumental in precluding him access to the courts. The only act, which he tries to characterize as a retaliation, by claiming that it was the result of a threat, is the hearing conducted regarding his abuse of the grievance procedure. There is no question that he was given adequate notice and an opportunity to be heard. He had, by that time, many statements from fellow inmates regarding his complaints, which were, or could have been presented at the hearing. The matter could be appealed to higher authority. There is no evidence of any lack of due process award a prison inmate.

Plaintiff expends much effort and paper in lamenting that his access to the library does not meet the standard of *Bounds v. Smith*, 430 U.S. 817 (1977), to which he is fond of making references. However, his complaints lack specificity to any injury or damage, except to his sense of justice, and a suggestion that it caused him to fail to appeal his criminal conviction and was the result of the failure of his petition for habeas corpus to the Federal Court. Not once does Plaintiff explain how often he is permitted to use the library or its materials, or how often or when he has been denied access to the same. There are generalized complaints about the frequency of library visits. There is an indiscernible document about library appointments. But there is little in the way of specific instances or a record of when he requested, when he was permitted, and when he was denied access to the library. There is no explanation of what he did when confronted with inmate law clerks who demanded stamps in return for their services.

Plaintiff, throughout his experience in prison and in this lawsuit, labors under the misunderstanding that he is entitled to access to the library as often and whenever he chooses. That is not the law, notwithstanding *Bounds v. Smith*.

Plaintiff's fondness for the language of *Bounds*, ignores the subsequent

clarification by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996), wherein the Supreme Court said that *Bounds* did not create an abstract, free standing right to a law library or legal assistance. Rather, the *Lewis* Court explained, the right that *Bounds* acknowledged was the right of *access to the courts*. *Lewis* 518 U.S. at 351. The Supreme Court went on to explain that the *Bounds* decision "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally. . . . Impairment of any *other* litigating capacity is simply one the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355.

Any inmate who alleges that he was denied access to the courts must establish that he suffered an actual injury *Lewis v. Casey,* 381 U.S. at 349. Actual injury means "some specific instance in which an inmate was actually denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1141 (9th Cir. 1989). "A prisoner must allege and show that denial of reasonable access to a law library caused an actual injury to access to courts in order to have a viable claim against prison officials under 42 U.S.C. §1983." *Vandelft v. Moses*, 31 F.3d 794, 798 (9th Cir.1994).

The foregoing brings us to the ultimate question of whether any of the above allegations, even assuming that inmate law clerks demanded stamps for services, even assuming that Plaintiff had no direct access to the library while in the segregated intake unit for approximately three weeks, even assuming that his efforts to visit the law library were at times hindered by the actions of the prison library personnel, and even assuming that he was not permitted the use of the library to the full extent provided for in the prison regulations, establish a denial of access to the courts. Even if the Court assumes the factual questions raised by Plaintiff are answered in a light most favorable to Plaintiff, there is no evidence that he was denied access to the courts. There is no evidence that his failure to appeal his conviction or win his petition for A writ of a habeas corpus in the Federal Court was caused by the extent of his access, or lack thereof, to the law library.

1       Let us look at the uncontested facts.

2       As noted above, Plaintiff was convicted in the State Court, pursuant to a plea agreement in which Plaintiff waived his "right to appeal the conviction . . . unless the appeal is based upon reasonable constitutionally jurisdictional or other grounds that challenges the legality of the proceedings. . . ." Defendants' Motion, Exhibit A, page 4. Plaintiff has presented no evidence of any basis for an appeal which would qualify as an exception to his waiver of appeal. Accordingly, he had no right to appeal, whether he had access to a law library or not.

       Plaintiff's actions prove he had no right to appeal, nor did he think he had a right to appeal. There is no evidence that he asked his attorney in the criminal case to file a notice of appeal. There is no evidence that during the time he was supposedly required to file the notice of appeal, while in the initial segregated unit, he requested an extension of time to file a notice of appeal. If he really intended to file a notice of appeal during that time, and the inmate law clerks were demanding payment for services, there is no reason why he could not have given them the stamps or other compensation so he could have filed his notice of appeal and then filed a grievance for reimbursement. Surely the stamps were not worth losing the right to appeal. There is no evidence that, after he obtained access to the law library and his law books, he attempted to file a notice of appeal showing good cause why he could not have filed it timely. Yet he did not do any of these things.

       Furthermore, he had a year to file a petition for a writ of habeas corpus in the State Court. But no such petition was ever filed, or even attempted, even when he had access to both his twelve law books and the law library.

       He lost his petition for a writ of habeas corpus in the Federal Court because he had not exhausted his remedies in the State Court, *i.e.*, he had not filed an appeal and a petition for a writ of habeas corpus in the State Court.

       In this litigation, Plaintiff has been able to file voluminous documents, with numerous citations to relevant cases. He has been given the opportunity to file motions and oppose motions. He has presented numerous documents to the Court in his various filings.

1 | There is no evidence that any library time restrictions have had any adverse effect on his
2 | ability to pursue his claim here.
3 |     It is an ineluctable fact that his failure to file a notice of appeal, his failure to
4 | file a petition for a writ of habeas corpus in State Court, and the denial of his petition for a
5 | writ of habeas corpus in Federal Court were not caused by the actions of any of the
6 | Defendants. Their conduct did not violate any *constitutional* right of access to the courts.
7 |     Without a constitutional violation, the issue of qualified immunity does not
8 | arise and further inquiry is not required. There are no genuine issues of material fact and the
9 | remaining Defendants have a right to summary judgment as to all claims.
10 |     IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#40) is
11 | GRANTED.
12 |     Dated: August 18, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**